## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

STACEY L. HOFFRICHTER,

      Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

      Defendant.

**NO. 05-CV-4117**

**ORDER**

_____

This case involves an application for disability benefits (SSD) under Title II of the Act, 42 U.S.C. §401 et seq. and an application for supplemental security income benefits (SSI) based on disability under Title XVI of the Act, 42 U.S.C. §§1381 et seq. Plaintiff, Stacey Hoffrichter, (hereinafter "Hoffrichter"), filed this action requesting reversal of the Commissioner's decision that she is not disabled. After careful consideration of the parties' written and oral arguments, the Court reverses the decision of the Administrative Law Judge ("ALJ") and awards benefits as of March 7, 2003, the date Dr. Johnson issued his report which goes to the heart of plaintiff's condition. Tr. 342-44.

## I. INTRODUCTION

Stacey Hoffrichter ("Hoffrichter") applied for disability benefits ("SSD") under Title II of the Act, 42 U.S.C. §401 et seq. and supplemental security income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. §§1381 et seq. Tr. 59-61, 499-501. Hoffrichter's alleged disability onset date is July 1, 2002. Tr. 59, 499.

Hoffrichter's application was denied initially, Tr. 38, 42-45, 502, and on reconsideration, Tr. 40, 48-51, 504, 506-09. A hearing was held before an administrative law judge on February 24, 2004. The ALJ determined that Hoffrichter was not "disabled" within the meaning of the Social Security Act. Tr. 36. The Appeals Council denied request for review, therefore, the ALJ's decision stands as the final decision of the Commissioner.

## II. BACKGROUND

Hoffrichter was 39 years old at the time of the administrative hearing. Tr. 539. Hoffrichter has a high-school education and has received her Certified Nurse's Aide certification. Tr. 541-42. Hoffrichter alleges disability due to:

history of scoliosis[1] that causes a lot of
pain and inflammation; AP and lateral x-ray
showing diffuse arthritic spurring; below
normal fine motor skills; increased
cervical thoracic[2] kyphosis[3]; multiple back
injuries; muscle spasms; left shoulder
injuries; trocherantic[4] (sic) bursitis[5] in
both legs with frequent flares; muscle
aches and joint pains; blurred vision with
visual loss on the left; dizzy spells;
sensitivity to heat and sun; tremors;
severe fatigue; shortness of breath;
headaches; nausea; incoordination problems;
nerve pain on the left side of the face and
in the fingers and toes; numbness and
tingling in the arms and legs with easy

---

[1] "[A]n appreciable lateral deviation in the normally
straight vertical line of the spine." DORLAND'S ILLUSTRATED MEDICAL
DICTIONARY 1669 (30th ed. 2003).

[2] Affecting the chest.

[3] "[A]bnormally increased convexity in the curvature of the
thoracic spine..." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 986 (30th
ed. 2003).

[4] Trochanteric: pertaining to the trochanter, which is below
the neck of the femur, i.e., the bone that extends from the pelvis
to the knee. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1953 (30th ed.
2003).

[5] Inflammation of the bursa, which is a sac or saclike cavity
filled with fluid to prevent friction in the tissues. DORLAND'S
ILLUSTRATED MEDICAL DICTIONARY 265, 262 (30th ed. 2003). There are
hundreds of bursa in the body. In this case, the problems are
in both legs.

fatigue of the extremities[.]
Tr. 15.  See also Tr. 80, 87-88.

On April 8, 1997, Hoffrichter was referred by her family doctor, Dr. Steven Baskerville, to a neurologist, Dr. W.O.V. Opheim.  Tr. 384.  Hoffrichter alleged a multitude of complaints.  Dr. Opheim noted: some limitation in the range of motion in Hoffrichter's neck; no significant muscle spasms; no swelling or puffing; and less subjective sensation to pin prick over the right leg versus the left leg.  Tr. 385.

On April 10, 1997, Hoffrichter received an MRI of the brain.  Tr. 389.  The MRI revealed a small lesion.  Id. Hoffrichter was referred to an endocrinologist[6], Mark Oppenheimer, due to this lesion on April 29, 1997.  Tr. 467. Dr. Oppenheimer's initial impression was a "very difficult and complicated situation."  Tr. 468.  Dr. Oppenheimer opined that he cannot tell if her symptoms stem from the tumor or if they are a result of her panic disorder.  Id.

On May 13, 1997, Hoffrichter had a follow up visit with Dr. Oppenheimer.  Tr. 466.  Again, Dr. Oppenheimer assessed

---

[6] The study of endocrinology, which is the study of hormones. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 613 (30th ed. 2003).

the situation as "difficult." Id. Dr. Oppenheimer concluded that her symptoms of dizziness and vertigo were not related to her pituitary tumor and decided to test her for acromegaly[7]. Tr. 466.

A year later, on June 15, 1998, Dr. Oppenheimer saw Hoffrichter again. Tr. 465. Dr. Oppenheimer noted "some leg symptoms off and on", but opined that things "remain[ed] unresolved". Id. Dr. Oppenheimer also recommended that a repeat MRI be conducted in 2001. Id. Dr. Oppenheimer also saw Hoffrichter in September of 1999, in which he opined that Hoffrichter was "doing well." Tr. 464.

On September 2, 2001, Hoffrichter went to the emergency room ("ER") due to straining her back while lifting an elderly patient and falling. Tr. 270. On October 12, 2001, Dr. Baskerville, noted that Hoffrichter had muscle spasm and tenderness as a result of her accident. Id.

On November 20, 2001, Hoffrichter went to the ER due to right knee pain. Tr. 288-89. Hoffrichter was given an anti-

---

[7] A chronic disease of adults caused by hypersecretion of growth hormone, resulting in enlargement of many parts of the skeleton and possible joint pain. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 20 (30th ed. 2003).

inflammatory for her knees.  Tr. 288.  On December 31, 2001,
Hoffrichter had her second MRI of the brain, which revealed no
evidence of mass, hemorrhage, or midline shift, no evidence of
multiple sclerosis, and no evidence of mass or enhancing
lesions.  Tr. 292.

On January 30, 2002, Dr. Baskerville diagnosed
Hoffrichter with lumbar and thoracic back spasms.  Tr. 287.
Dr. Baskerville switched Hoffrichter's diagnoses to chronic
back spasms on February 6, 2002.  Tr. 287.

On April 17, 2002, Hoffrichter reported that she is
feeling a little better on Zanaflex and she tolerated working
32 hours the previous week.  Tr. 283.  By June 20, 2002,
Hoffrichter indicated that she cannot work more than 30 hours
and has trouble with that due to fatigue.  Id.  Dr.
Baskerville noted that Hoffrichter is considering applying for
disability.  Id.

On April 1, 2002, Hoffrichter again reported to the ER
because she could not handle the back pain any longer.  Tr.
176-78.  Dr. Jeffrey Goerss placed Hoffrichter in the
hospital.  Dr. Goerss assessed Hoffrichter with chronic low
back problems as well as upper back.  Tr. 178.  On May 22,

2002, Hoffrichter had another neurological exam, which the neurologist's impressions were: "[c]omplaints of numerous subjective symptoms without any exam evidence of point towards demyelinating[8] disease." Tr. 388. Hoffrichter became very upset and angry when the neurologist indicated a psychological evaluation may help explain her symptoms. Id.

On April 19, 2002, Hoffrichter began seeing a chiropractor for chronic migratory spinal discomfort. Tr. 212. At the initial examination, an x-ray revealed multiple levels of disc degeneration, however mild. Tr. 213. Hoffrichter continued seeing a chiropractor from April to September of 2002. Tr. 205-12.

On July 1, 2002, Hoffrichter had arthroscopy surgery on her right knee. Tr. 180. On July 23, 2002, Dr. Baskerville opined that Hoffrichter should be limited to 25 hours of work per week and limited to light physical exertion. Tr. 281. On August 21, 2002, Hoffrichter went to the doctor due to back problems. Tr. 282. At this time, Hoffrichter was working about 24 hours per week and had trouble lifting anything over

---

[8] To destroy or remove the myelin sheath of (a nerve fiber), which is an insulating envelope that facilitates the transmission of nerve impulses.

5-10 lbs.  Tr. 282.  Dr. Baskerville assessed Hoffrichter with chronic back pain and spasms.  Tr. 282.

On November 21, 2002, Hoffrichter was seen for a consultative exam by Dr. Jeffrey Goerss.  Tr. 219-24.  Dr. Goerss noted that Hoffrichter failed to bring with her her medical records or a list of medications as requested.  Tr. 219.  After the exam, Dr. Goerss concluded that Hoffrichter has a history of back problems since 1986 that is getting progressively worse, her pain and tenderness are not substantiated by objective data such as x-rays, MRI, or EMG's. Tr. 223.

Dr. Goerss assessed Hoffrichter with a 10-15 pound lifting and carrying occasionally restriction; stand or sit for about 15-20 minutes, with standing somewhat limited due to back and shoulder pain; and stooping, climbing, and kneeling would be very difficult.  Tr. 223.

On January 6, 2003, Dr. Baskerville saw Hoffrichter due to continued back and neck problems.  Tr. 277.  Dr. Baskerville diagnosed Hoffrichter with chronic back pain and spasms and placed Hoffrichter on a 5 lb. lifting restriction.

<u>Id</u>.  Hoffrichter indicated that Flexeril[9] helps the most, but refuses to take strong medication because they make her "spacy".  <u>Id</u>.

On July 16, 2003, Hoffrichter was seen by Dr. Baskerville.  Tr. 478.  The exam revealed a cyst in the back of her knee, which was scheduled to be removed, marked tenderness in the left hip, and range of motion slightly guarded.  <u>Id</u>.  By November 21, 2003, Hoffrichter had her shoulder injected due to left shoulder bursitis with muscle spasm.  Tr. 476.

On February 26, 2003, Hoffrichter participated in a 2-hour psychological evaluation ordered by social security.  Tr. 342-44.  Dr. Don Johnson concluded that Hoffrichter fits all four criteria for a true Somatization[10] Disorder.  Tr. 344.  Dr. Johnson stated that Hoffrichter's,

---

[9]     "[T]rademark for preparation of cyclobenzaprine hydrochloride", which is used as a skeletal muscle relaxant for relief of painful muscle spasms.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 710, 459 (30th ed. 2003).

[10]    "[I]n psychiatry, the conversion of mental experiences or states into bodily symptoms."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1721 (30th ed. 2003).

> debilitated physical condition, whether
> caused by physical disease or a
> Somatization Disorder, not any mental
> limitations or interpersonal problems,
> would interfere with work-related
> activities. The pain she knows, and the
> accompanying inability to lift or the
> inability to stand or sit or maintain any
> position for any length of time is very
> real, and would interfere with her ability
> to maintain significant or meaningful
> employment.

Tr. 344.

Hoffrichter has an extensive history of chiropractor visits. See Tr. 294-341; 391-456. On January 20, 2003, Hoffrichter self-referred herself to see a licensed social worker for therapy. Tr. 497-98. Hoffrichter initially went to the therapist because she was upset that she did not receive disability, had been fighting with her parents, and recently broke up with her boyfriend. Tr. 497. At the initial visit, social worker Kathy Follows recommended a psychiatric evaluation and assessed Hoffrichter with a Global Assessment of Functioning ("GAF")[11] score of 55[12]. Tr. 495-

---

[11] GAF score is used by psychologists and psychiatrists to measure a person's functioning at the time of the session.

[12] A GAF score of 55 indicates "moderate symptoms" and "[m]oderate difficulty in social, occupational, or school
(continued...)

96. On February 25, 2003, Ms. Follows indicated that Hoffrichter "seem[ed] obsessed on getting some money either through Disability or Workman's Compensation." Tr. 493. By April 7, 2003, Hoffrichter dropped out of therapy without any notice to the therapist. Tr. 492.

Hoffrichter returned for therapy in August of 2003, and continued through the end of the year. Tr. 482-89. Therapist Ann Hess assessed Hoffrichter with a main goal of venting regarding her disability. Id. Hoffrichter was also assessed a GAF score ranging between 63-67. Id.

On April 13, 2004, Hoffrichter was informed by the State of Iowa, via letter, that she was eligible for Vocational Rehabilitation Services due to being "significantly disabled"; however, due to the increasing caseloads and service cost, Hoffrichter was placed on a waiting list. Tr. 148.

III.     ADMINISTRATIVE LAW HEARING

At the time of the hearing, Hoffrichter indicated that she works 20 hours a week at a gas station. Tr. 540. Hoffrichter testified that she has filed three worker's

---

[12](...continued)
functioning."

compensation claims.  Tr. 545.  Hoffrichter testified that in June of 2001 while working at Lake's Regional Health Care, she was helping a patient out of bed, the patient began to fall; and Hoffrichter attempted to catch the patient and strained her back.  Tr. 545.

Next, Hoffrichter stated that a patient jerked on her arm several times, which resulted in Hoffrichter having pain and being unable to move her elbow to her side.  Tr. 546. Hoffrichter stated she still has pain in her left shoulder today.  Id.  Hoffrichter testified that on October 8, 2001, she fell down and hit her tailbone when she was trying to help a patient get in the shower.  Tr. 547-48.

Hoffrichter testified that by January of 2002, she started having "bad back spasms again", which would result in being off of work for about a week to ten days.  Tr. 550-51. Hoffrichter said that these back spasms resulted in her being unable to stand straight up; unable to get out of bed; having to take pain pills and muscle relaxers.  Tr. 551.

Hoffrichter stated that she could not go back to work after this last back spasm in January.  Tr. 551.  She testified that she tried and broke down in tears after two

hours of work because she could not stand the pain.   _Id_.
Hoffrichter stated that she took an extended time off of work
at this time.

Hoffrichter attempted to go back to work full time in May
of 2002, because of financial reasons, but stated that she
could not physically do it because of her back.   Tr. 554.
Hoffrichter stated that around this time Dr. Baskerville
placed a 25 hour work restriction on her.   Tr. 555.
Hoffrichter testified that she has trouble lifting 18 packs of
beer, mopping the floor, and taking trash out.   Tr. 556.

The ALJ calculated that Hoffrichter's W-2 forms showed a
gross earnings of $8,698.24 for the year of 2003, which is
$724.85 per month of earnings.   Tr. 560-61.   The ALJ thought
that this is relevant because in 2003, over $800.00 per month
was considered substantial gainful employment.   Tr. 561.

Hoffrichter testified that she has trouble with her right
leg and knee, i.e., they're "weak and shaky".   Tr. 564.
Hoffrichter stated that she wears a back brace about four days
a week and typically wears one at work.   Tr. 567-68.
Hoffrichter testified that she usually does not walk over two
blocks because of increased pressure and pain.   Tr. 568-69.

Hoffrichter stated that lifting things creates the worst pain for her.  Tr. 569.

Lastly, the vocational expert ("VE"), Dr. William Tucker, testified.  Tr. 580.  Initially, the VE noted that Hoffrichter would have no transferrable skills to perform other semiskilled, but less physical occupations that the ones that she performed.  Tr. 581.  The ALJ's first hypothetical question posed to the VE asked if:

> an individual of younger age, and that
> she's under 50.  The individual is high
> school educated.  Does have certification
> in the necessary training to be registered
> as a CNA.  Does have a work history as you
> summarized [Exhibit 14-E].  Has medically
> determinable impairments that cause say,
> work related limitations described in our
> testimony. Crediting that testimony, could
> a person work full time in any of her past
> jobs or any other jobs?

Tr. 581.  The VE opined that due to the hour limitation that Hoffrichter testified about, she would not be able to have full time competitive employment.  Tr. 582.

The second hypothetical posed to the VE was:

> Assume with me a person could occasionally
> lift and carry 20 pounds, frequently 10
> pounds.  Could stand or walk or sit with
> normal breaks, about six hours a day.
> Push, pull is unlimited.  Postural
> activities are all checked occasionally.

14

> From a manipulative standpoint, they say
> avoid positive overhead work with the left
> shoulder.  Otherwise they don't limit
> reaching with the right or in any respect,
> handling, fingering or feeling.  Assume no
> visual[,] communicative[,] or environmental
> limits. [Moderate limitations with: the
> ability to maintain attention and
> concentration for extended periods; ability
> to perform activities within a schedule,
> maintain regular attendance, and be
> punctual within customary tolerances; and
> the ability to complete a normal
> workday/workweek without interruptions from
> psychologically based symptoms and to
> perform at a consistent pace without an
> unreasonable number and length of rest
> periods.]  [W]ould you expect a person to
> be able to do any of the claimant's past
> jobs?

Tr. 582-83.  The second hypothetical did not include a limitation on the number of hours that Hoffrichter can work. The VE opined that the cashier II would be a viable option, but the other jobs are performed at the medium level and would be excluded.  Tr. 583.

## IV.  ALJ'S DECISION

The ALJ concluded that Hoffrichter has not engaged in substantial gainful activity since July 1, 2002, which is her alleged disability onset date.  Tr. 32.  Next, the ALJ

15

determined that Hoffrichter has the "severe" impairment of somatoform disorder. Id.

But, the ALJ concluded that this impairment did not meet or equal the level of severity required under the social security listings. Id. The ALJ determined that Hoffrichter's allegations were not totally credible due to numerous inconsistencies in the record. Id.

The ALJ concluded that Hoffrichter could perform her past relevant work as a cashier II and would not be precluded from working forty hours a week. Id. Based on the foregoing, the ALJ concluded that Hoffrichter was not disabled. There is nothing in the record that shows that Hoffrichter has the capacity to work 40 hours.

## V.  DISCUSSION

This Court must determine whether the Commissioner's decision to deny disability benefits is "supported by substantial evidence on the record as a whole." Lorenzen v. Chater, 71 F.3d 316, 318 (8th Cir.1995).

### A.  THE COURT'S JURISDICTIONAL BASIS

In Bowen v. Yuckert, 482 U.S. 137 (1987), the United States Supreme Court delineated the steps which precede a

district court's review of a Social Security appeal:

> The initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. 42 U.S.C. § 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903 (1986). If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the determination is reconsidered de novo by the state agency. 20 C.F.R. §§ 404.909(a), 416.1409(a). Second, the claimant is entitled to a hearing before an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 C.F.R. §§ 404.929, 416.1429, 422.201 et seq. (1986). Third, the claimant may seek review by the Appeals Council. 20 C.F.R. §§ 404.967 et seq., 416.1467 et seq. (1986). Once the claimant has exhausted these administrative remedies, he may seek review in federal district court. 42 U.S.C. §405(g).

Yuckert, 482 U.S. 137, 142, 107 S. Ct. 2287, 2291 96 L. Ed. 2d 119 (1987).

Section 1383(c)(3) of Title 42 of the United States Code provides, "The final determination of the Secretary after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title. . . ." In pertinent part, 42 U.S.C. § 405(g) provides:

> Any individual, after any final decision of
> the Commissioner of Social Security made
> after a hearing to which he was a party,
> irrespective of the amount in controversy,
> may obtain a review of such decision by a
> civil action . . .brought in the district
> court of the United States for the judicial
> district in which the plaintiff resides...
> The court shall have power to enter, upon
> the pleadings and transcript of the record,
> a judgment affirming, modifying, or
> reversing the decision of the Commissioner
> of Social Security, with or without
> remanding the cause for a rehearing. The
> findings of the Commissioner of Social
> Security as to any fact, if supported by
> substantial evidence, shall be conclusive
> . . . . The judgment of the court shall be
> final except that it shall be subject to
> review in the same manner as a judgment in
> other civil actions . . . .

Accordingly, this Court may affirm, reverse or remand the ALJ's decision.

## B.   THE SUBSTANTIAL EVIDENCE STANDARD

The Eighth Circuit has made clear its standard of review in Social Security cases.   If supported by substantial evidence in the record as a whole, the Secretary's findings are conclusive and must be affirmed.  Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir. 2005); Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g) (Supp. 1995)).

"Substantial evidence 'is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" <u>Maresh v. Barnhart</u>, 438 F.3d 897, 898 (8th Cir. 2006) (quoting <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)). In the words of the Supreme Court, substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citing <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

The Eighth Circuit has taken pains to emphasize that, "[a] notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole.'" <u>Wilson v. Sullivan</u>, 886 F.2d 172, 175 (8th Cir. 1989) (quoting <u>Jackson v. Bowen</u>, 873 F.2d 1111, 1113 (8th Cir. 1989)).

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and

> apply a balancing test to evidence which is
> contradictory.

Id.

The Court, however, does "'not re-weigh the evidence or review the factual record de novo.'" Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996) (quoting Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994)). Likewise, it is not this Court's task to review the evidence and make an independent decision. Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996) (citing Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)). "If, after review, [it is] possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [this Court] must affirm the denial of benefits." Id. Even in the case where this Court "might have decided the case differently", this Court cannot reverse if there is substantial evidence to support the Commissioner's decision. Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (citing Kroqmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002)).

The process, however, is not stacked in the Commissioner's favor because, "[t]he standard requires a scrutinizing analysis, not merely a 'rubber stamp' of the

[Commissioner]'s action." <u>Cooper v. Secretary</u>, 919 F.2d 1317, 1320 (8th Cir. 1990) (citing <u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th Cir. 1989)).  In cases where the Commissioner's position is not supported by substantial evidence in the record as a whole, the Court must reverse.  <u>See</u> <u>Lannie v. Shalala</u>, 51 F.3d 160, 164 (8th Cir. 1995).  "'[T]he goals of the Secretary and the advocates should be the same:  that deserving claimants who apply for benefits receive justice.'" <u>Battles v. Shalala</u>, 36 F.3d 43, 44 (8th Cir. 1994) (quoting <u>Sears v. Bowen</u>, 840 F.2d 394, 402 (7th Cir. 1988)).

**C.   DETERMINATION OF DISABILITY**

Social Security Disability Benefits may be awarded to disabled individuals who meet certain income and resource guidelines.  42 U.S.C.A. § 423 (d)(1)(A).  In connection with the award of such benefits to an adult:

> [A]n individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C.A. § 423 (d)(1)(A).

An impairment will only be considered of such severity if

the individual is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy. . . ." 42 U.S.C.A. § 423 (d)(2)(A).

Determination of a claimant's disability involves a five step analysis. 20 C.F.R. § 404.1520 (a-f). In the first step, the ALJ determines if the Claimant had engaged in past substantial gainful activity. Next, the ALJ decides if the Claimant has an impairment. Third, the ALJ must look at the regulations to determine if the impairment meets or is medically or functionally equal to a Listing in Appendix 1, Subpart P of Regulation No. 4. Fourth, the ALJ assesses the Claimant's residual functional capacity (RFC), to see if the Claimant could perform his past relevant work. At the fifth and final step of the analysis, the Social Security Commission must prove that there are a significant number of jobs (other than his past relevant work) in the national economy that a person of the same age, education, past work experience, and physical and mental residual functional capacity can perform. 20 C.F.R. § 404.1520 (f).

To acquire Social Security Disability Benefits, initially the claimant has the burden of showing 'that [he] is unable to perform [his] past relevant work.'" <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001) (quoting <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998)). This encompasses the first four steps of the analysis. "If the claimant carries [her] burden, 'the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and with vocational factors such as age, education, and work experience.'" <u>Id</u>. There must be some medical evidence to support the ALJ's determination of the claimant's residual functional capacity and this evidence should address the claimant's ability to function in the workplace. <u>Dykes v. Apfel</u>, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam); <u>Nevland v. Apfel</u>, 204 F.3d 853, 858 (8th Cir. 2000).

**D.    REVIEW OF THE ALJ'S DECISION**

"Deference to the ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence." Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005).   By that same token, the ALJ's credibility determination should not just be stated as a conclusion in the guise of findings, but should be closely and affirmatively linked to substantial evidence.   Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Additionally, the law in the Eighth Circuit is well settled that an ALJ may not discredit a claimant's subjective complaints of pain, discomfort, or other disabling limitations simply because there is a *lack of objective evidence*.   See Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002) (noting that the ALJ may not discredit a claimant solely because the objective medical evidence does not fully support the claimant's subjective complaints of pain).   Instead, the ALJ may only discredit the subjective complaints if they are inconsistent with the record as a whole.   See Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003); see also Bishop v. Sullivan, 900 F.2d 1259, 1262 (8th Cir. 1990) (citing

<u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Under <u>Polaski</u>, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. <u>Polaski</u>, 739 F.2d at 1322. When the ALJ considers all of the <u>Polaski</u> factors and still makes a determination to reject a claimant's subjective complaints, the ALJ must give "good reasons" for discrediting the claimant's testimony. <u>Hogan v. Apfel</u>, 239 F.3d 958, 962 (8th Cir. 2001). If an ALJ discredits a claimant's testimony and gives good reasons for doing so, the ALJ's decision should normally receive deferential treatment. <u>Id</u>. (quoting <u>Dixon v. Sullivan</u>, 905 F.2d 237, 238 (8th Cir. 1990)).

In this case, the ALJ concluded that Hoffrichter's impairment did not meet or was medically or functionally equal to the Listing in Appendix 1, Subpart P, App. 1, § 12.07.

After careful review, this Court is persuaded that Hoffrichter does meet or equal the requirements of Listing 12.07, Somatoform Disorders. The regulations define somatoform disorders as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07. The Eighth Circuit has defined somatoform disorder as "a psychiatric disorder which causes the sufferer to have a distorted perception of physical ailments." <u>Metz v. Shalala</u>, 49 F.3d 374, 377 (8th Cir. 1995).

In order to meet the level of severity required under the somatoform disorder listing, a claimant must satisfy both the "A" and "B" criteria under the listing. First, Hoffrichter must demonstrate by medically documented evidence that she has certain symptoms that result from the disorder.[13] The

---

[13] A. Medically documented by evidence of one of the following:
1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or
2. Persistent nonorganic disturbance of one of the following:
a. Vision; or
b. Speech; or
c. Hearing; or
d. Use of a limb; or

(continued...)

Commissioner agreed that Hoffrichter met the Part A criteria. See Docket 8, at 12 ("In this case, Plaintiff had the required 'Part A' findings as she had a medically documented history of multiple physical symptoms of several years duration without demonstrable organic findings or known mechanisms."); see also Tr. 352.

Next, Hoffrichter must also satisfy the "Part B" criteria.[14] The ALJ concluded, based on medical consultants with the state agency that reviewed the evidence, that Hoffrichter had "mild" restrictions in daily living activities; "mild" difficulties maintaining social functioning; "moderate" difficulties maintaining concentration, persistence, and pace; and "no" episodes of

_____

[13] (...continued)
e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or
f. Sensation (e.g., diminished or heightened).
3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury[.]

[14] B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

decompensation.  Tr. 30.

1.  **Daily Activities**

First, Hoffrichter must demonstrate a "marked" restriction of activities of daily living.  Daily living activities include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene..."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(1).  "Marked...means more than moderate but less than extreme" as long as the impairment "seriously [interferes] with [claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  Id. at § 12.00(C).

Hoffrichter's daily activities were markedly limited due to her somatoform disorder.  Hoffrichter testified that she had recurring back spasms that would result in her inability to get out of bed or stand up straight.  Tr. 551.  Hoffrichter stated that she would be restricted to the bed and the couch for a period of seven to ten days at a time.  Id.  Hoffrichter stated that she would take pain pills and muscle relaxers and use ice packs to alleviate the symptoms.  Id.

Due to these back spasms, Hoffrichter was forced to quit

her main employment at the hospital.  Hoffrichter also quit
her part-time employment at the gas station for about three
weeks during this time, but she testified that she tried to
work at the gas station one day a week because she had no
income.  Tr. 553.

As mentioned, Hoffrichter testified that she tried to
work full-time at the gas station initially, but could not
physically do it.  Tr. 554.  Hoffrichter stated that Dr.
Baskerville placed a 25 hours a week limitation on her, but
her supervisor cut it down to 20 hours, because Hoffrichter
could not handle the 25 hours.  Tr. 555-56.  "An ALJ should
not penalize a claimant who, prior to an award of benefits,
attempts to make ends meet by working in a modest, part-time
job."  <u>Cline v. Sullivan</u>, 939 F.2d 560, 565-66 (8th Cir.
1991).

The government also referenced <u>Harris v. Barnhart</u>, 356
F.3d 926, 930 (8th Cir. 2004) for the proposition that because
Hoffrichter worked on a part-time basis that is indicative
that Hoffrichter is capable of working full-time.  This Court
is persuaded that the <u>Harris</u> case or <u>Browning v. Sullivan</u>, 958
F.2d 817, 821 (8th Cir. 1992), which is cited in <u>Harris</u>, is

not as dispositive on this issue as the government argues. Furthermore, the record clearly demonstrates that Hoffrichter could not work more than the limited hours that she attempted to work. This Court is also persuaded that since the record is clear that Hoffrichter cannot work more than the limited hours that she attempted to work, 20 C.F.R. § 404.1571 is not applicable.

Hoffrichter indicated that she sleeps eight hours a night; rests for nine hours a day/evening (due to health problems); and has 7 hours to either work or socialize. Tr. 140. Hoffrichter also indicated that she cannot do chores around the house, except for preparing meals and washing a few dishes. Id. Hoffrichter stated that she is unable to clean the house or vacuum, and she is exhausted and in considerable pain after she attempts to work. Tr. 142.

Hoffrichter stated that it is difficult to take the trash out or vacuum. Tr. 113. After vacuuming, Hoffrichter can do very little the rest of the day and needs to sit or lay down the rest of the day. Id. Hoffrichter's mother indicated that Hoffrichter has to rest during chores and can only complete minimal work due to pain and fatigue. Tr. 122.

The ALJ decided to accept that state agency medical consultant's opinion as to Hoffrichter's limitations.[15] Tr. 30. This Court is persuaded that this was error. First, Hoffrichter's treating physician, Dr. Baskerville, opined that Hoffrichter has "a functional impairment and inability to perform daily functions without undue pain and stress. This includes difficulty for her in performing activities of daily living such as cleaning her house, dressing, etc." Tr. 365. Dr. Baskerville also opined that Hoffrichter's symptoms lead to a "marked" impairment in the ability to function normally in the workplace and in her daily activities. Tr. 366. "Generally, [the Social Security Administration] give[s] more weight to opinions from [the claimant's] treating sources..." 20 C.F.R. § 416.927(d)(2).

---

[15] The state agency's medical consultant concluded that Hoffrichter is:

> moderately limited in her ability to maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

Tr. 30.

Next, Hoffrichter participated in a two-hour mental evaluation conducted by Dr. Johnson. Dr. Johnson unequivocally opined that Hoffrichter meets all of the criteria for a true somatization disorder. Tr. 344. This opinion is entirely consistent with the record. In fact, this opinion is the missing piece of the puzzle.

Since Hoffrichter, never saw a psychologist, the medical doctors could not determine what was causing Hoffrichter's disabling pain, i.e., because there was a non-organic component. This is the first diagnosis of a somatization disorder, and it is consistent with the entire record.

Hoffrichter's doctors could not find an organic component that would create the type of problems that Hoffrichter was complaining about. Hoffrichter's consultative examiner conclusively determined that there was a mental component that was causing Hoffrichter's disabling condition. The regulations also give "more weight" to a medical source that has examined a claimant versus a source that has not. This Court is persuaded that Dr. Johnson's opinion, after a two-hour mental evaluation, was entitled to more weight and is consistent with the record.

It should be noted that this Court is not relying on any multiple sclerosis ("MS") diagnosis.  Also, this Court rejects the government's argument that Hoffrichter displayed "submaximal effort" during a functional capacity examination. Docket 8, at 5.  This Court is persuaded that it is a logical argument, but that is the very essence of somataform disorder in that it cannot be backed up or organically proven.

This Court is persuaded that based on the record, that Hoffrichter's daily activities are "markedly" restricted.  The only contradictory evidence is the opinion of the non-examining consultative doctor that indicated that Hoffrichter could complete a normal workday and maintain regular attendance at a job without interruptions due to psychologically based symptoms, which conclusion is entirely inconsistent with the record.

2. **Concentration, Persistence, and Pace**

Hoffrichter's impairment also resulted in a marked difficulty in her ability to "sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work

settings."  20 C.F.R.  Pt. 404, Subpt. P, App. 1, §
12.00(C)(3).

Hoffrichter has repeatedly stated that she is constantly
in some sort of pain.  Hoffrichter's pain creates marked
difficulties in concentration, persistence, and pace.
Hoffrichter stated that she is distracted easily and loses
focus.  Tr. 117.  Hoffrichter also stated that after doing
simple tasks, her back pain significantly increases and she
must lay down the rest of the day.

Dr. Johnson noted during his examination that Hoffrichter
became "somewhat distracted during various concentration and
short term memory exercises."  Tr. 343.  Hoffrichter testified
that when she is on certain medications she seems "higher than
a kite."  Tr. 562.

During the work setting, Hoffrichter is constantly
focused on her pain and unable to concentrate on work related
things.  The pain consumes most of Hoffrichter's mind during
a work day.  This Court is persuaded that Hoffrichter has more
than "moderate" difficulties in maintaining concentration,
persistence, and pace, as determined by the state agency

medical consultant, that never saw Hoffrichter and the ALJ concluded was consistent with the record.  Tr. 356.

## VI. CONCLUSION

The ALJ's conclusion that Hoffrichter's somatoform disorder did not meet or equal the listing of 12.07 is not substantially supported by the entire record.  Hoffrichter has a medically determinable impairment of somatoform disorder that manifests itself in a medically documented history of multiple physical symptoms of several years duration, that began before the age of 30, and has caused Hoffrichter to frequently see a physician, which results in marked restrictions in daily activities and marked difficulties in maintaining concentration, persistence, or pace.  The clear weight of the evidence indicates that Hoffrichter is disabled.

Based upon the foregoing, this Court concludes that Hoffrichter was disabled as of March 7, 2003.  This is the date that Dr. Johnson issued his report, which is clear and conclusive.  This Court is persuaded that this report gets to the heart of the plaintiff's condition.

Remanding this case for further proceedings would only delay Hoffrichter's receipt of disability benefits (SSD) and

supplemental security income benefits (SSI), therefore, "an immediate order granting benefits without remand is appropriate." <u>Cline v. Sullivan</u>, 939 F.2d 560, 569 (8th Cir. 1991); <u>Tennant v. Schweiker</u>, 682 F.2d 707, 710 (8th Cir. 1982). Hoffrichter clearly meets the requirements of Listing of Somatoform Disorder in Appendix 1, Subpart P, App. 1, § 12.07. Judgment shall be entered reversing the ALJ's decision of denying such benefits.

**Upon the foregoing,**

**IT IS HEREBY ORDERED** that the decision of the ALJ is reversed, and the Commissioner is directed to compute and award disability benefits to Hoffrichter with an onset date of March 7, 2003.

A timely application for attorney fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412 ("EAJA"), must be filed within thirty days of the entry of final judgment in this action. Thus, if this decision is not appealed, and Hoffrichter's attorney wishes to apply for EAJA fees, he must do so within 30 days of the entry of the final judgment based on the Order in this case.

**IT IS SO ORDERED** this 29th day of December, 2006.

_Donald E. O'Brien_
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa